# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **MICHAEL RAYMOND STONE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| **RUSSELL DWAYNE MOORE,** | ) | **JURY DEMAND (12)** |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT

Plaintiff, Michael Raymond Stone, by and through undersigned counsel, hereby files this Verified Complaint for claims of defamation, false light invasion of privacy, and emotional distress against Defendant, Russell Dwayne Moore.

## PARTIES

1. Plaintiff, MICHAEL RAYMOND STONE (hereinafter "Plaintiff"), is a citizen of Georgia.

2. Defendant, RUSSELL DWAYNE MOORE (hereinafter "Defendant"), is a citizen of Tennessee. Upon information and belief, Defendant can be served with process at 9915 Lodestone Drive, Brentwood, Tennessee 37027. Defendant was previously involved in the activities of the Southern Baptist Convention as the President of the Ethics and Religious Liberty Commission. Defendant is an influential figure in American evangelicalism, works as the director of a major evangelical publication, and is a frequent contributor for major publications such as Time Magazine, The New York Times, CNN, and The Washington Post.

1

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this action on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332:

    a. Plaintiff is a citizen of Georgia.

    b. Defendant is a citizen of Tennessee.

    c. The amount in controversy exceeds, exclusive of interest and costs, Seventy-Five Thousand Dollars ($75,000).

4. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, as Defendant is a citizen of Tennessee, the state in which this judicial district is located, and Defendant resides within this judicial district. Defendant is subject to personal jurisdiction in this judicial district.

## STATEMENT OF FACTS

5. Plaintiff is a distinguished pastor who has worked with the Southern Baptist Convention (hereinafter the "SBC") for approximately thirty (30) years. The SBC, a corporation organized under the laws of the State of Georgia, and its affiliated entities, constitute the largest Protestant and second-largest Christian organization in North America. As an autonomous organization that works cooperatively with, *inter alia*, more than 47,000 congregations and over forty (40) state and regional conventions, the SBC has neither the ability nor the authority to govern the actions of individuals and / or entities that are technically and legally distinct from the SBC. A copy of the SBC Constitution is attached hereto as **Exhibit A**.

6. Plaintiff focuses his career on serving a devout congregation of Southern Baptists at Emmanuel Baptist in Blackshear, Georgia as well as serving the national community of

Southern Baptists with his involvement on the Executive Committee of the Southern Baptist Convention (hereinafter the "Executive Committee" or the "SBCEC"). Plaintiff's income is derived from his services as a trusted minister in local church contexts, including, but not limited to, honorariums Plaintiff receives as a guest speaker at religious services and conferences, almost exclusively among Southern Baptists.

7. Plaintiff became involved with the Executive Committee in 2014. Plaintiff served as the chairman of the Executive Committee from 2018 to 2020. The Executive Committee is comprised of eighty-six (86) directors from different states and territories. The Executive Committee reviews financial statements, annual operating budgets, and provides public relations and news services in cooperation with various selected ministries. The Executive Committee is a nonprofit corporation organized under the laws of the State of Tennessee and maintains its headquarters in Nashville, Tennessee. The Executive Committee is affiliated with, but legally distinct from, the SBC.

8. Beginning in June 2019, the SBC formed its own standing committee, the Credentials Committee, to handle all matters of cooperation with affiliates, including how to address reported allegations of sexual abuse. The only issues the Executive Committee, as well as the Credentials Committee, may address are the actions of a local church and that local church's ability to send messengers, analogous to representatives, to the SBC Annual Meeting. Specific churches which are in friendly cooperation with the SBC are allowed by the SBC to send messengers to register and vote at the SBC Annual Meeting. Neither the Executive Committee nor the Credentials Committee has the authority to investigate a local church, a restriction that is explicitly stated in the SBC bylaws. Moreover, neither the Executive Committee nor the Credentials Committee has the authority to force specific

churches to create or implement specific policies or hire or fire specific individuals within any given church.

9. The Executive Committee, as well as the Credentials Committee, examine the actions of a local church and not the proven or alleged actions of an individual within the church. Therefore, the alleged or proven actions of an individual could only come to the attention of the Executive Committee or the Credentials Committee from knowledge in the public domain. The only allegation both entities can consider is a claim that the local church itself acted wrongly despite information the local church knew.

10. The Ethics and Religious Liberty Commission of the Southern Baptist Convention (hereinafter the "ERLC") is a nonprofit corporation organized under the laws of the State of Tennessee and maintains its headquarters in Nashville, Tennessee. The ERLC is an entity dedicated to advocating for the protection of religious liberty in the public square. The ERLC is affiliated with, but legally distinct from, the SBC. Between June 1, 2013 and June 1, 2021, Defendant served as President of the ERLC.

11. Throughout his service on the Executive Committee, and pursuant to his related fiduciary obligations, Plaintiff would show that he participated in a task force created to assess whether the actions of the ERLC (then led by Defendant) and its leadership were negatively affecting the fiscal well-being of the SBC. Plaintiff would show that the Executive Committee approved the formation of said task force during its February 18, 2020 meeting, and that Defendant opposed the creation and stated goals of said task force and its planned investigation related thereto.

12. Beginning on or about February 24, 2020, within one (1) week of the creation of the aforementioned task force, Defendant began a malicious, intentional, and egregious

campaign to harm Plaintiff, including, but not limited to, defaming him within the text of two letters strategically concealed from general distribution within the ERLC and the SBC but then subsequently surreptitiously released, or "leaked," to the news media which Defendant knew, due to the controversial nature of the letters, Defendant's prominent position within the ERLC and the religious community at large, and Defendant's significant connections to major media outlets, would result in their widespread publication. Said letters were then, in fact, subsequently published in Religion News Service, Baptist Press, and several other news media outlets.

13. Upon information and belief, Defendant's malicious campaign against Plaintiff was motivated in part by Defendant's desire to retaliate against Plaintiff for his service on the aforementioned task force of the Executive Committee and to compromise its investigation into the ERLC by obfuscating pertinent facts.

14. Plaintiff would show that, on or about May 29, 2021, an unidentified member of the ERLC Board of Trustees released a letter (hereinafter the "First Letter") written by, and at the direction of, the Defendant to the news media. The First Letter is originally dated February 24, 2020. This letter contained numerous false allegations against Plaintiff, who was then a prominent candidate for the presidency of the SBC. Upon information and belief, the First Letter was leaked to the news media in 2021 at the instructions of Defendant to defame Plaintiff and discredit his campaign for the presidency of the SBC. A copy of the First Letter is attached as **Exhibit B**.

15. Plaintiff would show that on or about June 2, 2021, a second letter (hereinafter the "Second Letter") written by Defendant was strategically released to the media either by Defendant or pursuant to Defendant's instructions. The Second Letter, originally dated May 31, 2021

5

and written to the then-president of the SBC, also contained numerous false allegations against Plaintiff. A copy of the Second Letter is attached as **Exhibit C**.

16. Upon information and belief, Defendant authored the First Letter and the Second Letter with the intention that both letters ultimately be disseminated to the public via leaks of the same to the news media.

17. Plaintiff would further show that the First Letter indirectly identifies Plaintiff by alleging that "the current chairman of the Executive Committee" and the "Executive Committee . . . 'exonerated' churches, in a spur-of-the-moment meeting, from serious charges of sexual abuse cover-up." Referring to Plaintiff, the First Letter further alleges that "the current chairman of the Executive Committee [Plaintiff]. . . drove the motion, but also saw to it that he would be a member of the 'task force.'"

18. This statement is false as the Executive Committee does not have the authority to "exonerate" or clear a church of allegations of wrongdoing. Since the Executive Committee is not authorized or able to conduct a criminal investigation, it has no capacity to declare a church "exonerated." As set forth in Article III of the SBC Constitution, the Executive Committee only has the power to make recommendations that a church no longer be considered "in friendly cooperation" with the SBC – a sanction that only results in a church's inability to send messengers to register and vote at the SBC Annual Meeting.

19. Plaintiff would further show that additional statements made by Defendant in the First Letter, including a statement declaring the existence of an SBC "culture where countless children have been torn to shreds, where women have been raped" are demonstrably false. Defendant also alleges that he was being asked to be "quiet about . . . molestation, for the sake of some title." The First Letter was sent to at least six (6) members of the ERLC's
6

executive board and for fifteen (15) months, they all were silent about allegations of Plaintiff's involvement in a cover-up of sexual abuse and molestation. Upon information and belief, the writing of the First Letter and its intentional release fifteen (15) months later was orchestrated by Defendant and motivated to defame Plaintiff and to negatively impact Plaintiff's candidacy for the presidential election of the SBC in June 2021.

20. Plaintiff would further show that the Second Letter falsely states that Plaintiff "had no trouble leading an effort . . . in assembling an investigative review of the entity working to address the abuse." In addition, the Second Letter falsely states that Plaintiff "facilitate[d]" the creation of the task force created by the Executive Committee during its February 18, 2020 meeting, as well as that Plaintiff "drove the committee throughout the process and managed the parameters of its scope," and that Plaintiff "somehow managed to make himself chair of the committee and with the power to name its membership."

21. Plaintiff would show that these statements are demonstrably false, as the motion to form the task force was written by full-time staff of the Executive Committee, unanimously approved by its officers, unanimously approved by a subcommittee Plaintiff did not attend, and overwhelmingly approved by the full board. Further, official SBC records clearly indicate that Plaintiff's authorization as board chairman to appoint the task force membership is the norm in SBC institutions.

22. Plaintiff would further show that the task force was initiated by senior employees of the Executive Committee, including Dr. Ed Upton, Mr. Jonathon Howe, and Mr. Bill Townes. These senior leaders initiated the discussion and drafted the motion that would eventually create the task force under the leadership of Dr. Ronnie Floyd, President and CEO of the SBCEC.

23. Plaintiff would also show that Defendant included similar points in the Second Letter, again indirectly identifying Plaintiff and further stating that the "Executive Committee itself" was responsible for "the spiritual and psychological abuse of sexual abuse survivors."

24. Plaintiff would show that Defendant's allegation in the First Letter that the task force was created in a "secret meeting" and was a "secret task force" is clearly false. The official minutes of the Executive Committee will confirm that Plaintiff, as then-chairman, requested that matter be added to the agenda in open session, later being put in closed session after an appeal from a chairman of a relevant subcommittee as well as a unanimous vote by the full board.

25. Plaintiff would also show that, in the Second Letter, Defendant further expounded on points raised in the First Letter, stating that "they went into a secret session, without ever talking to you or to me, to form yet another secret task force."

26. Plaintiff would further show that Defendant's allegation that the task force was formed to address sex abuse and for the desire to silence him on the issue is also false. The task force worked for nearly a year, communicated with over forty (40) CEOs from various state conventions, received numerous emails from Southern Baptists, and met for dozens of hours. At no point during the task force's formation, deliberation, or ultimate report was the matter of sexual abuse ever mentioned by anyone as a concern of the ERLC.

27. Plaintiff would further show that, in the Second Letter, Defendant falsely asserts that Plaintiff has "stonewalled many attempts at reform for the sake of the sexually abused." Plaintiff would show that this statement is false, and that Plaintiff's actions and work throughout his involvement with the SBC and the Executive Committee demonstrate both

8

Case 3:21-cv-00794   Document 1   Filed 10/18/21   Page 8 of 16 PageID #: 8

the seriousness with which he takes allegations of sexual abuse occurring within the SBC's affiliate organizations and his commitment to improve the SBC within the framework of its polity and governance.

28. Since Defendant wrote these harmful statements and disseminated or caused them to be disseminated for public consumption, Plaintiff would show that he has received numerous resentful personal messages through social media which have upset Plaintiff greatly and caused him emotional distress. Plaintiff would show that such messages are the natural and probable consequence of Defendant's malicious campaign designed to defame Plaintiff and falsely portray Plaintiff as being involved in a clandestine effort to cover up allegations of sexual abuse occurring within the SBC's affiliate organizations.

29. Defendant's statements regarding Plaintiff have wrongfully directed anger, blame, and frustration towards Plaintiff and damaged Plaintiff's reputation and business interests.

30. Plaintiff avers that such communications are the direct and probable consequence of Defendant's malicious campaign to defame Plaintiff, and that the intentional spreading of such harmful misinformation by Defendant is but one of Defendant's aims in attacking Plaintiff and attempting to destroy his professional and personal life.

31. Plaintiff's reputation has already been significantly damaged by Defendant's defamation of his character and the damage to Plaintiff's reputation has diminished his future earning capacity.

32. Plaintiff would show that, because of Defendant's malicious and defamatory campaign against him, including, but not limited to, Defendant's strategic publication and release of the First Letter and the Second Letter to the news media shortly before the vote on the SBC presidency at the SBC Annual Meeting in June 2021, Plaintiff narrowly lost in his bid to

become the new President of the SBC. Plaintiff would show that, after narrowly defeating Plaintiff in a runoff election, Ed Litton was voted to become the new President of the SBC in June 2021.

33. Plaintiff's business operations have already been negatively impacted by Defendant's untruthful statements due to a decreased trust of and confidence in Plaintiff in the religious community, and Plaintiff's pastoral efforts will undoubtedly suffer decreased church attendance and a reduction in donations and honorariums because of Defendant's statements which are untruthful and have cast Plaintiff in a false light.

34. Plaintiff has suffered immense and immeasurable reputational harm due to Defendant's baseless and false accusations, particularly regarding Plaintiff's leadership role in the SBC Executive Committee and alleged efforts to cover up sexual abuse in the church.

35. In addition to reputational and professional harm, Plaintiff has suffered extreme mental anguish and emotional distress due to Defendant's defamatory attacks, especially because Plaintiff is himself a survivor of childhood sexual abuse.

## CAUSES OF ACTION

### COUNT I: DEFAMATION – LIBEL

36. Plaintiff incorporates each of the preceding paragraphs (1-35) as if each is fully set forth herein.

37. Defendant repeatedly and knowingly published false statements about Plaintiff and Plaintiff's supposed involvement in covering up alleged sexual abuse within or occurring in entities affiliated with the SBC, the Executive Committee, or both. These statements include, but are not limited to:

    a. Defendant's statement alleging Plaintiff's involvement in working to "exonerate"

churches accused of negligence and mistreatment of sexual abuse survivors.

    b. Defendant's statement that Plaintiff "had no trouble leading an effort . . . in assembling an investigative review of the entity working to address the abuse."

    c. Defendant's statement that Plaintiff "facilitate[d]" the creation of the task force created by the Executive Committee during its February 18, 2020 meeting, as well as that Plaintiff "drove the committee throughout the process and managed the parameters of its scope," and that Plaintiff "somehow managed to make himself chair of the committee and with the power to name its membership."

    d. Defendant's statement that Plaintiff has "stonewalled many attempts at reform for the sake of the sexually abused."

38. Defendant published or caused these statements to be published to, and subsequently circulated by, members of the press and news media, including several newspapers, online news outlets, and the public, thereby damaging Plaintiff's reputation and standing within the community and the SBC.

39. Defendant's statements about Plaintiff were made with knowledge the statements were false or with reckless disregard for the truth.

40. As a direct and proximate result of Defendant's false and defamatory statements, Plaintiff has suffered a tremendous loss in professional cultivation and reputational standing, decreased future earning power, the presidency of the SBC, and serious mental and emotional injury in the form of extreme public embarrassment, stress, anxiety, and fear.

41. Defendant's defamatory statements have caused severe mental anguish to Plaintiff.

42. Defendant's defamatory statements have damaged Plaintiff's personal and professional reputation.

## COUNT II: FALSE LIGHT INVASION OF PRIVACY

43. Plaintiff incorporates each of the preceding paragraphs (1-35) as if each is fully set forth herein.

44. Defendant's statements regarding Plaintiff would be highly offensive to a reasonable person, particularly given the scurrilous nature of the statements and the targeted campaign to attack Plaintiff professionally and personally by repeatedly characterizing Plaintiff as an individual who worked to cover up allegations of sexual abuse within the SBC and "exonerate" churches or individuals accused of sexual abuse affiliated with the SBC.

45. Beginning with Defendant's initial statements made in the First Letter on February 24, 2020 and the Second Letter on May 31, 2021, Defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized materials and the false light in which Plaintiff would be placed.

46. For the aforementioned reasons, Defendant's statements constitute discrete and selective presentations of information that are susceptible to inferences casting Plaintiff in a false light.

47. As a result of Defendant's actions, Defendants statements regarding Plaintiff have been widely disseminated to the public and numerous individuals and entities affiliated with the SBC and the Executive Committee.

48. Plaintiff has suffered damages as a result of Defendant's false light invasion of privacy against Plaintiff.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49. Plaintiff incorporates each of the preceding paragraphs (1-35) as if each is fully set forth herein.

50. The actions of Defendant in orchestrating and propagating an intentional, coordinated, and malicious campaign to defame Plaintiff and cast Plaintiff in a false light before the Southern Baptist community and the public at large have been designed to intentionally inflict mental anguish and severe emotional distress upon Plaintiff, as well as tarnish Plaintiff's reputation within the religious community and jeopardize Plaintiff's future earning capacity, through the publication of false and highly offensive material within the SBC, entities affiliated with the SBC, the news media, and elsewhere.

51. Defendant's conduct in orchestrating and carrying out his malicious campaign against Plaintiff is so extreme and outrageous that it is not tolerated by civilized society.

52. As a result of Defendant's conduct in defaming Plaintiff and casting Plaintiff in a false light before the Southern Baptist community and the public at large, Plaintiff has suffered serious mental injury and emotional distress.

## PUNITIVE DAMAGES

53. Plaintiff incorporates each of the preceding paragraphs (1-35) as if each is fully set forth herein.

54. Defendant has acted maliciously, intentionally, fraudulently, or recklessly by attempting to ruin Plaintiff's person and professional reputation through a calculated public smear campaign.

55. Defendant's actions in repeatedly uttering false and offensive defamatory comments about Plaintiff on several different occasions show a consistent pattern of intentional and malicious acts continuing to the present.

56. At the very least, Defendant's actions constitute reckless conduct in that Defendant should have known that there was no factual basis for most, if not all, of the statements made by

13

Defendant.

57. As a result of Defendant's malicious, intentional, fraudulent, or reckless action, Plaintiff is entitled to punitive damages equal to the greater of two (2) times the total amount of compensatory damages awarded or Five Hundred Thousand ($500,000.00) Dollars.

## **PRAYERS FOR RELIEF**

**WHEREFORE,** PREMISES CONSIDERED, Plaintiff respectfully requests the following relief:

1. That proper process issue and be served on Defendant, and that Defendant be required to answer this Verified Complaint within the time required by law;

2. That Plaintiff be allowed to amend this Verified Complaint as justice requires or as this lawsuit progresses and more evidence is procured in the discovery process;

3. That Plaintiff be awarded judgment in his favor on all accounts of this Verified Complaint in such sums that shall be determined to fully and fairly compensate Plaintiff for all general, special, incidental, and consequential damage incurred, or to be incurred, by Plaintiff, but in no event an amount less than Seven Hundred Fifty Thousand ($750,000.00) Dollars;

4. That Plaintiff be awarded punitive damages against Defendant upon an evidentiary showing of Plaintiff's entitlement to the same;

5. That Plaintiff be awarded pre- and post-judgment interest;

6. That Plaintiff be awarded a trial by a jury of twelve (12) on all issues so triable;

7. That costs, including court costs, be assessed against Defendant; and

8. That Plaintiff be awarded any further and general relief deemed appropriate by this Court.

Respectfully submitted,

/s/ Todd G. Cole
**Todd G. Cole, Esq., BPR # 031078**
**Andrew Goldstein, Esq., BPR # 037042**
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Telephone: (615) 490-6020
Fax: (615) 942-5914
tcole@colelawgrouppc.com
agoldstein@colelawgrouppc.com
*Attorneys for Plaintiff*

[VERIFICATION PAGE TO FOLLOW]

# VERIFICATION

STATE OF _GEORGIA_ )
COUNTY OF _PIERCE_ )

I, MICHAEL RAYMOND STONE, being first duly sworn according to law, make oath that I have read the foregoing Verified Complaint, know the contents thereof, and that the same is true and correct to the best of my knowledge, information and belief.

_____
MICHAEL RAYMOND STONE

SWORN TO AND SUBSCRIBED before me this the _15_ day of _Oct_ 2021.

_____
NOTARY PUBLIC

My Commission Expires: _10-17-2022_

[Notary Seal: TOMMY E LLOYD, NOTARY PUBLIC, GEORGIA, PIERCE CO., EXPIRES SEPT. 17, 2022]

16